IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| VICTOR YAKUBETS and | : | |
| CAFÉ NOSTALGIE, INC., | : | |
| Defendants. | : | NO. 12-4583 |

**M E M O R A N D U M**

PRATTER, J.                                                                                           SEPTEMBER 16, 2013

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment, filed on July 3, 2013 (Docket No. 7), for damages pursuant to 47 U.S.C. § 605 and for the tort of conversion. Joe Hand filed its Complaint on August 9, 2012 (Docket No. 1), and properly served Defendants, Victor Yakubets and Café Nostalgie, Inc., by process server on October 24, 2012 (Docket Nos. 4 & 5). After Defendants failed to answer or otherwise respond to the Complaint, Joe Hand requested the entry of default, which the Clerk of Court entered on January 24, 2013.

For the reasons that follow, Joe Hand's Motion for Default Judgment will be denied, although it may still move for judgment and damages for conversion and pursuant to 47 U.S.C. § 553, the remaining cause of action set out in the Complaint.

**I.    Background**

Joe Hand Promotions, Inc., is an international closed-circuit distributor of sports and entertainment programming. Joe Hand purchased the exclusive nationwide commercial distribution rights to broadcast a particular boxing match, *"The Big Challenge": Adamek v.*

1

*Grant* ("the Match"), on August 21, 2010. In turn, Joe Hand entered into sublicensing agreements with various commercial entities that granted those parties rights to publicly exhibit the Match. According to the affidavit of investigator Daniel Szlezak, on August 21, 2010, Mr. Szlezak entered Café Nostalgie and observed an unlawful exhibition of the Match on four televisions. Joe Hand argues that because it had exclusive rights to distribute the Match, Defendants could only have lawfully exhibited it if they had contracted with Joe Hand. Thus, Joe Hand argues, the interception of the Match was not only unlawful, it was also willful. Compl., Docket No. 1, ¶ 24. Joe Hand did not allege whether the Defendants had intercepted the Match via cable or satellite. Based on this single unlawful showing of the Match as observed by Mr. Szlezak, Joe Hand alleges three counts in its Complaint: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; and (3) conversion.

## II.     Discussion

In its Motion for Default Judgment, Joe Hand asks for full statutory and enhanced damages under 47 U.S.C. § 605, in the aggregate amount of $110,000, as well as $500 for the tort of conversion. Because the returned summonses indicate that the Defendants were properly served, the Court must next consider whether Joe Hand's Complaint states causes of action under § 605 and the tort of conversion. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("[U]pon default, . . . the court determines that the unchallenged facts shown of record establish a legally binding obligation; it adjudicates the plaintiff's right of recovery and the extent of it, both of which are essential elements of judgment." (citations omitted)); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) ("[B]efore granting a default judgment, the Court must first ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." (internal quotation marks omitted)). Because

default was entered, the Court accepts as true the well-pleaded factual allegations of Joe Hand's Complaint and treats those allegations as though they were established by proof, except those relating to damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). But the Court need not accept Joe Hand's legal conclusions: "Even after default, . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE § 2688, at 63 (3d ed. 1998); *see Pope*, 323 U.S. at 12; *Gordashevsky*, 558 F. Supp. 2d at 536; *cf. Thomson v. Wooster*, 114 U.S. 104, 113 (1885) ("[A] decree *pro confesso* is not a decree as of course according to the prayer of the bill, nor merely such as the complainant chooses to take it; but that it is made (or should be made) by the court, according to what is proper to be decreed upon the statements of the bill assumed to be true.").

### A. Joe Hand's Cause of Action Under 47 U.S.C. § 605

Although Joe Hand moves for default judgment under 47 U.S.C. § 605, its Complaint alleges violations of both 47 U.S.C. §§ 553 and 605. To determine whether Joe Hand is entitled to damages under § 605, the Court must assess whether, as a matter of law, § 605 should apply at default judgment where a plaintiff has pled facts which, when taken as true, must as a logical matter support a violation of either § 605 or § 553, but prove neither as an individual claim.

Section 553 prohibits the unauthorized interception and transmission of cable communications, whereas § 605 prohibits the unauthorized interception and transmission of encrypted satellite cable programming. *J&J Sports Prods., Inc. v. Moody*, No. 08-5225, 2009 WL 1515749, at *1 n.1 (E.D. Pa. May 28, 2009); *see* 47 U.S.C. §§ 553, 605(a).[1] Indeed, § 605 is

---

[1] Section 605 provides, in relevant part,

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport,

3

"applicable only to satellite transmissions insofar as they are actual airborne transmissions." *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 205 (3d Cir. 2001).

Here, however, nothing in Joe Hand's Complaint or Mr. Szlezak's affidavit establishes how the signal was intercepted. For example, Mr. Szlezak does not mention observing either a satellite dish or a cable box when he visited Café Nostalgie. In fact, as Joe Hand acknowledges, it "cannot determine the precise means that the Defendants used to receive the *Program* unlawfully." Mem., Docket No. 7, at 8.

At the motion to dismiss stage, where the plaintiff is permitted to plead alternative theories of liability, Joe Hand's Complaint can state causes of action under both §§ 553 and 605. *See, e.g.*, *J&J Sports Prods., Inc. v. 4326 Kurz, Ltd.*, No. 07-3850, 2008 WL 4630508 (E.D. Pa. Oct. 17, 2008), at *3-4 & n.3; *see also Circuito Cerrado, Inc. v. Katuran*, No. 10-4343, 2011 WL 3925245 (E.D. Pa. Sept. 6, 2011), at *2 & n.13. But at the default judgment stage, although a court must treat a plaintiff's factual allegations as true, the allegations taken as proven must show an entitlement to relief and proof of damages under a stated cause of action. In this case, Joe Hand's allegations-*qua*-facts, combined with the evidence it offers in affidavits, is unable to

---

> effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .

47 U.S.C. § 605(a).

Section 553 provides, in relevant part:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

*Id.* § 553(a)(1).

show that the Defendants intercepted any satellite transmission. Consequently, Joe Hand has not carried its burden of proof under § 605.

Of course, Joe Hand is not without recourse. Instead, this Court must first answer the peculiar question that arises at default judgment when a plaintiff's allegations-*qua*-facts prove neither of his alternative theories of relief, but logic dictates that they must prove one or the other. A further premise is that no further development of the facts will allow the court to determine which provision should apply. Here, in other words, as a matter of syllogistic logic, the Defendants must have violated one of either § 605 or § 553 based on the allegations-*qua*-facts: (1) the Match was broadcast, and therefore could have been intercepted, only by cable and satellite;[2] and (2) the Defendants intercepted the signal.[3] Through which provision, if not both, should Defendants' claims be channeled?

In the only part of his briefing that can be read to address this problem, counsel argues that Joe Hand "should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendants used" "because the Defendants have failed to respond," and therefore moves for damages pursuant solely to § 605. Mem., Docket No. 7, at 8.[4] But the Court is unconvinced by Joe Hand's attempt to profit from this unclear picture:

---

[2] Joe Hand, Jr.'s affidavit avers that the Match could have been intercepted from cable or satellite transmissions. Joe Hand, Jr. Aff., Docket No. 8, ¶ 9.

[3] For an example of similar logic up to this point, but in the context of a motion to dismiss, see, for example, *Circuito Cerrado*, 2011 WL 3925245, at *2.

[4] The Court is concerned about Mr. Riley's representations to the Court. For instance, counsel's Memorandum discusses a case from a California federal district court and notes only that that court "did not undertake an analysis of the viability of awarding damages under both sections [553 and 605]." Mem., Docket No. 7, at 12. The unwarranted implication of this statement is that such a dual award is viable. But in the Third Circuit it is certainly not. *TKR Cable Co.*, 267 F.3d at 207 ("Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605. Cable City therefore is subject to the statutory damages set forth in § 553(c), rather than the damages

> [I]t does not appear that Plaintiff made any effort to obtain this information on its own. For instance, Plaintiff could have sought to obtain this information by filing a third party subpoena or requesting an order for inspection or, at the very least, Plaintiff could have sent someone out to the establishment at issue to see if a satellite dish could be seen from the outside. Therefore, the Court is not convinced that Plaintiff was entirely powerless in obtaining the information necessary to determine the means of signal transmission . . . .

*J&J Sports Prods., Inc. v. Montes*, 12-02246, 2013 WL 245476 (N.D. Cal. Jan. 22, 2013), at *3 n.1 (citation, quotation marks, and alterations omitted); *accord Joe Hand Promotions, Inc. v. Mujadidi*, No. 11-5570, 2012 WL 3537036 (N.D. Cal. Aug. 14, 2012), at *4; *cf. J&J Sports Prods., Inc. v. Long*, No. 08-640, 2009 WL 1563914 (E.D. Pa. June 3, 2009), at *1 ("[B]ecause the only evidence J & J Sports has concerning the method used by the defendants to receive the boxing match consists of cable invoices, J & J Sports seeks damages under 47 U.S.C. § 553.").

Courts appear to take different approaches to the problem as to which, § 553 or § 605, should apply at default judgment when the plaintiff has not made out facts to support either. *J&J Sports Prods., Inc. v. Bonilla*, No. 12-02243, 2013 WL 3725264 (N.D. Cal. July 14, 2013), at *3 & n.2 ("courts have been split"); *Montes*, 2013 WL 245476, at *3 ("there appears to be a split of authority"). A scan of case law from the federal appellate courts picks up nothing but radio silence, a static which, the procedural posture of these cases telegraphs, will not likely be pierced by our Court of Appeals' clarion call. Several district courts in the Third Circuit have "award[ed]

---

imposed under § 605(e)." Yet counsel did not cite *TKR*—nor, for that matter, any case decided by the Third Circuit Court of Appeals. Of possibly greater concern is that this is not the first time that a court in this District has admonished Mr. Riley regarding this broader issue. He "has been repeatedly chastised by other courts in this district for moving for judgment as to both statutes and for requesting enhanced statutory damages as to both statutes." *Moody*, 2009 WL 1515749, at *1 (collecting cases); *see id.* at *1 n.2 ("As this Court and this case are in the Third Circuit, and the Third Circuit has clearly ruled the opposite, plaintiff has again attempt[ed] to mislead the Court."). Although Joe Hand moves for damages only under § 605 and not under both §§ 553 and 605, the Complaint pleads both causes of action and fails to cite any authority for why, as a matter of law, Joe Hand should be permitted to proceed under § 605 as opposed to § 553, and Mr. Riley's analysis of the cases suggests no impediment to relief under both statutes. By now, he should know better.

damages under *either* statute for a single amount," *Moody*, 2009 WL 1515749, at *1 (emphasis added); *see also, e.g.*, *J&J Sports Prods., Inc. v. Roach*, No. 07-5059, 2008 WL 8901291 (E.D. Pa. July 8, 2008), at *2; *J&J Sports Prods., Inc. v. Munguti*, No. 06-1282, 2007 WL 928479 (D.N.J. Mar. 27, 2007), at *4 (awarding "an authorized amount of statutory damages for the illegal interception of programs under either [statute]"), as have district courts in sister circuits, *see, e.g.*, *J&J Sports Prods., Inc. v. Turrubiartes*, No. 11-1496, 2013 WL 3878740 (S.D. Ind. July 26, 2013), at *2 ("[B]ecause the damages the Court ultimately considers just under these circumstances fall within the parameters of either statute and because the entry of default has established, as a factual matter, that either one or the other statute has been violated, the Court need not definitely determine the applicable statute."); *G&G Closed Circuit Events, LLC v. Castro*, No. 12-01036, 2012 WL 3276989 (N.D. Cal. Aug. 9, 2012), at *3-4. The reasoning for this approach seems to be that the ranges of possible damage awards under §§ 553 and 605 often overlap. *See, e.g.*, *Montes*, 2013 WL 245476, at *3; *Castro*, 2012 WL 3276989, at *2; *see also Moody*, 2009 WL 1515749, at *2 ("Based on the evidence presented and the Complaint, we find that $1,200.00 is the proper amount of statutory damages under either § 605 or § 553, as the rate for purchase of the Match would have been $1,200.00.").[5]

Other district courts, by contrast, presume that § 553 applies in the absence of any evidence of satellite signal interception. *See, e.g.*, *Mujadidi*, 2012 WL 3537036, at *4 ("In the absence of any evidence indicating that a satellite dish was used, the Court concludes that [the Plaintiff] has established at most interception through use of a cable box."); *J&J Sports Prods.*,

---

[5] Section 605 authorizes damages of between $1000 and $10,000 for each violation, with enhanced damages of up to $100,000 for willful violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(c)(ii), whereas § 553 authorizes an award of damages of $250 to $10,000 for all violations, with enhanced damages of up to $50,000 for willful violation, *id.* § 553(c)(3)(A)(ii), (c)(3)(B). This distinction may shed light on the reason for Joe Hand's invocation of § 605 here.

7

*Inc. v. Ayala*, No. 11-05437, 2012 WL 4097754 (N.D. Cal. Sept. 17, 2012), at *2 ("Because sufficient facts have not been alleged, nor has Plaintiff presented any affidavit evidence of a satellite, the Court holds that 47 U.S.C. § 605 does not apply.").

Having reviewed the case law and considered the issue, this Court subscribes to the view that where a plaintiff's complaint pleads claims under both §§ 553 and 605, but at the default judgment stage the plaintiff can prove neither with individual specificity, then § 553 will be applied. A presumption in favor of § 553 is the more principled and persuasive approach. Because a defendant cannot violate both sections with the same conduct—"§ 605 encompasses the interception of satellite transmissions" whereas "[o]nce a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605," *TKR Cable Co.*, 267 F.3d at 207—both approaches recognize that the substantive law itself forces a determination of which statute applies. But the enigmatic approach of awarding damages under "either statute," even if expedient or practical, cannot be the general rule. For one, the syllogism that proves that a plaintiff violated either § 553 or § 605 lacks sufficient bandwidth to allow the plaintiff to proceed under § 605: if § 553 did not exist, neither would the syllogism, and such plaintiffs would be entitled to nothing.

Second, the fact that § 553(c)(3)(A)(ii)'s and § 605(e)(3)(C)(i)(II)'s damage ranges *sometimes* overlap cannot support the adoption of a categorical rule that damages may be awarded under either. In any case involving several incidents of unlawful interception, for example, the statutory damage guidelines would suggest sharply divergent amounts because § 605 provides for damages for each violation, whereas § 553 provides for one award (plus enhanced damages in the court's discretion) for all violations. *See Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 95 (3d Cir. 1999) ("We hold that § 553(c)(3)(A)(ii) expressly limits the available statutory civil damages to a single award of between $250 and

8

$10,000 for all violations."). Further, under the "either statute" approach, courts in the Third Circuit often award statutory damages equivalent to what the defendant would have paid to have lawfully obtained and exhibited the program in question.[6] But what appears to be an easy solution to courts confronting rate cards of $2200, an amount within the overlapping ranges of both §§ 553 and 605, is unavailable in cases, like Joe Hand's here, where the rate card establishes a price of $500, within the range of § 553(c)(3)(A)(ii) but outside the range of

---

[6] Courts in the Third Circuit calculating statutory damages under "either" § 553(c)(3)(A)(ii) or § 605(e)(3)(C)(i)(II) often base their calculations on the plaintiff's rate cards—the stated price the plaintiff "would have charged the [d]efendant to lawfully receive and exhibit the boxing match." *J&J Sports Prods., Inc. v. Gallegos*, No 08-201, 2008 WL 3193157 (D.N.J. Aug. 5, 2008), at *4; *see Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398 (D.N.J. Mar. 13, 2013), at *7 ("Defendants, operating a restaurant that could accommodate approximately 150 patrons, would have had to pay $1,200 for a license to show the Broadcast in question. . . . Thus, the Court awards Plaintiff $1,200 in statutory damages under either 47 U.S.C. § 553(c)(3)(A)(ii) or 47 U.S.C. § 605(e)(3)(C) (i)(II)." (citation omitted)); *J&J Sports Prods., Inc. v. Edrington*, No. 10-3789, 2012 WL 525970 (D.N.J. Feb. 16, 2012), at *4 (awarding plaintiff "the amount that Defendants would have paid to legitimately purchase the right to commercially exhibit the [event]"); *J&J Sports Prods., Inc., v. Gencarelli*, No. 10-4513, 2011 WL 1253886 (D.N.J. Mar. 28, 2011), at *3 (awarding statutory damages "based on the amount the defendants would have paid if they had purchased an authorized broadcast"); *Moody*, 2009 WL 1515749, at *2 ("Based on the evidence presented and the Complaint, we find that $1,200.00 is the proper amount of statutory damages . . . , as the rate for purchase of the Program would have been $1,200.00."); *Munguti*, 2007 WL 928479, at *4 (granting "Plaintiff a default judgment against Defendants . . . the amount Plaintiff claims that Defendants would have had to pay to legitimately purchase the right to commercially exhibit the boxing match"); *J&J Sports Prods., Inc. v. Perdomo*, No. 06-1374, 2007 WL 923522 (D.N.J. Mar. 26, 2007), at *4 (awarding as statutory damages an "amount Plaintiff claims that Defendants would have had to pay to legitimately purchase the right to commercially exhibit the boxing match").

  Many courts in the Third Circuit also take this same approach under § 605(e)(3)(C)(i)(II) alone, *see, e.g.*, *Joe Hand Promotions, Inc. v. Becchetti*, No. 12-1242, 2013 WL 4520638 (M.D. Pa. Aug. 26, 2013), at *3 ("According to plaintiff's affidavit, a venue of this size could have purchased the program for $1,100. The court believes this amount is adequate to compensate plaintiff for defendants' violation of § 605." (citation omitted)); *Joe Hand Promotions, Inc. v. Krist*, No. 12-783, 2012 WL 6628934 (W.D. Pa. Dec. 19, 2012), at *1 & n.1 ("The Court will award the statutory minimum, $1,000, because said amount approximates the [$900 that the] Defendants would have had to pay to lawfully air the broadcast . . . ."), as do courts in other circuits, *see, e.g.*, *Bonilla*, 2013 WL 3725264, at *4 ("[T]he Court shall base statutory damages on the cost of the commercial license."); *Joe Hand Prods., Inc. v. Feil*, No. 12-1603, 2013 WL 2936389 (D. Minn. June 14, 2013), at *1 (awarding as statutory damages the amount "that it would have cost Defendants . . . to obtain a license to lawfully broadcast the boxing match").

9

§ 605(e)(3)(C)(i)(II).[7] Additionally, while costs and attorneys' fees must be awarded under § 605, the court may decline to award them under § 553.[8]

In addition, the presumption that § 553 applies absent any evidence of interception by satellite is a more principled approach. The fundamental principle that a plaintiff in a civil lawsuit must prove his case by a preponderance of the evidence dictates that if he can present only insufficient evidence of a particular wrong, he should not be entitled to relief. Although it may be clear from the facts alleged, and accepted as true on a motion for default judgment, that a violation of either § 605 or § 553 must have occurred, in such a situation the plaintiff has not discharged that burden of proof with respect to either. If they had a choice, plaintiffs in every such case would elect to proceed under § 605: its damage range is higher than § 553's, and it applies upon *each* violation. But in each such case, the plaintiff will have failed to allege a necessary element of § 605(a), to wit, radio transmission by satellite. *See* 47 U.S.C. § 605 ("No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . ."). Thus, notwithstanding the similar remedial schemes of the two statutes, in the absence of evidence of a violation subjecting the defendant to greater damages (§ 605), the plaintiff should be restricted to pursuing damages under § 553. *See, e.g.*,

---

[7] Mr. Szlezak opined that Café Nostalgie's capacity "is approximately 100 people." Szlezak Aff., Docket No. 7, at 2. Joe Hand's rate card for the Match "was based on the capacity of the establishment," and it establishes that a venue hosting up to one hundred patrons could have lawfully received and exhibited the Match for $500. Joe Hand, Jr. Aff. ¶ 8; *id.* Exhibit 1.

[8] *Compare* 47 U.S.C. § 605(e)(3)(B)(iii) ("The court *shall* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." (emphasis added)), *with id.* § 553(c)(2)(C) ("The court *may* direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." (emphasis added)); *cf. Moody*, 2009 WL 1515749, at *2 ("In light of counsel's misconduct, we decline to award attorney[s'] fees for the Memorandum or the Affidavit presented to this Court."); *Munguti*, 2007 WL 928479, at *4 ("The Court also refuses to enter a judgment in favor of Plaintiff for attorney's fees and costs considering the conduct of Plaintiff and its attorney.").

*J&J Sports Prods., Inc. v. Nguyen*, No. 12-02253, 2013 WL 3814670 (N.D. Cal. July 22, 2013), at *3 ("[T]he affidavit does reveal that [the Defendant] did not have a satellite dish. As a result, the court concludes that Defendant intercepted the program via a cable signal in violation of § 553 and will award damages under that section. . . . Such a presentation—the result of an 8 minute investigation—certainly cannot support a maximum award."); *J&J Sports Prods., Inc. v. Hernandez*, No. 12-05773, 2013 WL 2468354 (N.D. Cal. June 6, 2013), at *2 ("[T]he Complaint makes no specific allegations that Defendant used satellite technology, even after Plaintiff sent an investigator into Defendant's establishment to observe the broadcast. The Court will therefore proceed to assess damages pursuant to Section 553 . . . .").

Practical reasons also support channeling plaintiffs through § 553 under these circumstances: "a cable box is more easily hidden" than a satellite dish. *J&J Sports Prods., Inc. v. Guzman*, No. 08-05469, 2009 WL 1034218 (N.D. Cal. Apr. 16, 2009), at *2. As a result, where a defendant has somehow intercepted a signal but the means remain undiscovered—subterranean or up in the air—then, "unlike § 605, a permissible inference can be drawn with respect to § 553." *Ayala*, 2012 WL 4097754, at *2; *accord Guzman*, 2009 WL 1034218, at *2; *cf. J&J Sports Prods., Inc. v. Fisher*, No. 12- 790, 2013 WL 4482405 (S.D. Ohio Aug. 20, 2013), at *4 ("It is well established that courts will not award damages under both § 605 and § 553 in cases based on facts like these. In this case, the Court finds that actual damages are too difficult to ascertain and that statutory damages under § 553 are appropriate." (citations omitted)); *J&J Sports Prods., Inc. v. Saucedo*, No. 12-04657, 2013 WL 2384258 (N.D. Cal. May 30, 2013), at *4 ("[T]he investigator indicated that Defendant's establishment does not have a satellite dish. As a result, Defendant most likely intercepted the program via a cable signal in violation of Section 553." (citation omitted)). Third-party subpoenas and orders for inspection to one side, a plaintiff who has gone to the trouble of sending an investigator to a defendant's establishment, as

11

here, can at the very least ask the investigator to keep his antennae up for evidence of a satellite dish.

For the foregoing reasons, the Court adopts a presumption in favor of § 553, to the exclusion of § 605, in the context of a motion for default judgment where the plaintiff's complaint has pled alternative causes of action under both provisions, and the plaintiff's allegations-*qua*-facts and additional evidence do not establish which applies. Consequently, Joe Hand's motion for default judgment is denied with respect to § 605, but without prejudice to a motion for default judgment pursuant to § 553.

### B.    Joe Hand's Cause of Action for Conversion

Joe Hand also moves for an award of $500 for the tort of conversion. The Court will deny without prejudice Joe Hand's motion with respect to the conversion claim. Joe Hand's counsel addresses the conversion claim in his Memorandum of Law in a mere seven-line paragraph that cites only the California Civil Code and a California case. *See* Mem., Docket No. 7, at 20. Because counsel has not suggested why choice of law principles support the use of California law in this case, where the violation occurred in Pennsylvania, the Court finds that Joe Hand has not properly moved for default judgment with respect to the conversion claim.

### III.   Conclusion

For the reasons stated above, Joe Hand's Motion for Default judgment is denied with prejudice with respect to § 605 and without prejudice with respect to the conversion claim. The Court adopts a presumption in favor of § 553, to the exclusion of § 605, in the context of a motion for default judgment where the allegations and additional facts do not establish which section applies. But to ensure that its communication does not get scrambled or intercepted, the

Court invites Joe Hand to move for default judgment pursuant to § 553 and the tort of conversion, provided counsel cites appropriate authorities.

An Order consistent with this Memorandum follows.

BY THE COURT:

　/s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge
